UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 22-cv-20858-BB

CHARLENE CANYES,

    Plaintiff,
vs.

CARNIVAL CORPORATION,
d/b/a CARNIVAL CRUISE LINES, INC.

    Defendant.
_____/

**AMENDED COMPLAINT**

COMES NOW, the Plaintiff, CHARLENE CANYES, by and through undersigned counsel, and sues the Defendant, CARNIVAL CORPORATION, d/b/a CARNIVAL CRUISE LINES, INC., and further states as follows:

**JURISDICTIONAL AND VENUE ALLEGATIONS**

1.    This is an action for damages in excess of $75,000.00, exclusive of interest and costs.

2.    Plaintiff, CHARLENE CANYES (hereinafter "Plaintiff"), is *sui juris*, is a citizen and resident of the state of Florida and was at all times material a fare-paying passenger.

3.    Defendant, CARNIVAL CORPORATION, d/b/a CARNIVAL CRUISE LINES, INC. (hereinafter "CARNIVAL"), is a foreign entity incorporated in the Republic of Panama, with its principal place of business in Miami, Florida.

4.    Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1333 because this is a maritime cause of action.

5.    At all times material hereto, CARNIVAL has conducted ongoing, substantial, and

not isolated business activity in Miami-Dade County, Florida, in the Southern District of Florida, so that *in personam* jurisdiction exists in the United States District Court for the Southern District of Florida.

6. At all times material, CARNIVAL has engaged in the business of operating maritime cruise vessels for paying passengers including the Plaintiff.

7. In its ticket contract with Plaintiff, CARNIVAL requires fare-paying passengers like Plaintiff to bring any lawsuit against CARNIVAL arising out of injuries or events occurring on the cruise voyage in this federal judicial district. Accordingly, venue is proper.

8. Venue is also proper in this district because the CARNIVAL's principal place of business is located within this district.

9. Plaintiff has complied with all conditions precedent to filing this action.

## **GENERAL ALLEGATIONS**

10. CARNIVAL owed Plaintiff a duty of reasonable care in the circumstances.

11. On or about January 15, 2019, the Plaintiff was a fare-paying passenger aboard CARNIVAL's cruise ship CARNIVAL HORIZON. Plaintiff was traveling with her husband and daughter in the cabin.

12. The cabin steward made up the beds during the cruise and lowered the upper berth or bed one time so Plaintiff's daughter could sleep up there. He also configured the lower beds into different positions including a king-size bed and twin beds for Plaintiff and her husband.

13. On the aforesaid date, CARNIVAL owned and/or operated the CARNIVAL HORIZON.

14. At all times material Plaintiff acted with due care for her own safety.

## COUNT I – NEGLIGENT MAINTENANCE OF THE PASSENGER CABIN

15. Plaintiff reavers and realleges paragraphs 1 through 14 as if set forth herein.

16. On or about January 15, 2019, while Plaintiff was occupying her cabin on board the ship, Plaintiff bent down to retrieve a bottle of water that had fallen out of a refrigerator and as she stood up, she was caused to forcefully strike her head on a sharp metal latch protruding down from the upper berth immediately above her. The latch secures the upper berth to the ceiling of the cabin when it is not in use as a bed.

17. The upper berth is lowered or raised by cabin stewards every cruise in this interior cabin who would have seen the latch in the open or down position and dangerous condition during the exercise of their ordinary duties during Plaintiff's cruise or during any prior cruises since the vessel went into service.

18. Furthermore, the latch in the identical down position would likewise be visible to housekeepers who would have seen the latch in the open or down position during the exercise of their duties during Plaintiff's cruise or during any prior cruises since the vessel went into service.

19. Prior to the Plaintiff's incident, CARNIVAL knew or should have known under the exercise of reasonable care that the cabin was unsafe due to the sharp hard-edged latch protruding down from the upper berth which was unreasonably dangerous and hazardous because the ability to hit one's head on the latch is more likely than not based on the following facts:

   a. The latch has hard sharp metal edges, and/or;

   b. The color of the latch blends in with the ambient colors of the cabin making it less likely to be noticed by passengers like Plaintiff using the cabin, and/or;

   c. When the upper berth is down for sleeping, the latch is in a location and height which makes physical contact with the latch by a passenger routinely

      moving about the cabin more likely, and/or;

    d.    The construction of the latch with its hard, sharp metal edges makes it more likely than not that serious injury will result from unintentional physical contact with the latch when the upper berth is in the down position, and/or;

    e.    When the two lower beds are configured into a king-size bed as they were are the time of the incident, the latch is not readily observable to passengers like Plaintiff at all times using the cabin, and/or;

    f.    The lighting in the interior cabin is dim making it harder to discern the presence of the latch, and/or;

    g.    The cabin steward left the upper berth in the down position instead of replacing it into the ceiling in the day after its use at night which made the hazard a permanent fixture in the cabin during the cruise, and/or;

20. Prior to the Plaintiff's incident, CARNIVAL was or should have been aware through the exercise of reasonable care in the circumstances that maintenance of the passenger cabin in regard to the extremely sharp-edged latch on the upper berth as aforesaid caused the cabin to be unreasonably dangerous in the circumstances.

21. In addition, the upper berth should have been restored to its up position on the wall after the morning hours when it was not in use but the cabin steward failed to put the bed up on the day of the incident which allowed the hazardous latch to protrude into living area of the cabin during waking hours when Plaintiff would be likelier to be moving about the cabin.

22. The dangerous condition of the latch was readily observable and known to Defendant without the necessity of there being prior reported injuries by a passenger because of the nature of the hazard as alleged in paragraph nineteen but the dangerous condition was not open and obvious to the Plaintiff at all times including the time of the incident and would not be open and obvious to a reasonable person at all times under the circumstances.

23. CARNIVAL had actual knowledge and/or constructive knowledge of the unreasonably dangerous qualities of the latch as alleged in paragraph nineteen through the actual

knowledge and observations of the cabin steward and housekeeping personnel who entered the cabin on a regular basis before Plaintiff boarded the vessel doing various assigned tasks in the cabin like making up the beds or cleaning the cabin and/or during Plaintiff's cruise with CARNIVAL before Plaintiff was injured.

24. Despite having actual and/or constructive knowledge that its cabin posed an unreasonable hazard due to the poor maintenance of the cabin regarding the latch and the upper berth as previously alleged, CARNIVAL did not change the maintenance of the upper berth or cabin to keep the sharp, protruding metal latch from posing a risk of serious harm to passengers like the Plaintiff herein before Plaintiff was injured. Nor did the cabin steward replace the bed in its proper position in the wall in the morning after Plaintiff and her husband and daughter left the interior cabin for the day which would have eliminated the hazard posed by the protruding latch.

25. At all times material, CARNIVAL either created the dangerous conditions of which Plaintiff complains in paragraph nineteen, and/or the dangerous conditions existed for a sufficient period of time that CARNIVAL had constructive knowledge of the dangerous conditions, and/or CARNIVAL had actual knowledge of the dangerous conditions through the ordinary observations of its crewmembers frequenting the cabin in the ordinary course of their duties.

26. As a result of the foregoing, the Plaintiff was seriously injured in and about her body when she was caused to strike her head on a sharp metal latch protruding down from an upper berth aboard the CARNIVAL's vessel. As a result of her head and brain injuries, Plaintiff has suffered pain, mental and emotional distress and anguish therefrom; severe migraine headaches; psychological injuries; incurred medical expense and physical handicap and a loss of the ability to enjoy life; suffered an aggravation of known and unknown pre-existing conditions, suffered a loss of enjoyment and value of the cruise; suffered a loss of earnings and/or earning capacity, suffered

scarring from where she struck her head.  Said personal injuries are permanent and/or continuing in nature and the Plaintiff shall continue to suffer such losses and impairments in the future.

WHEREFORE, Plaintiff demands judgment from CARNIVAL for damages, pre-judgment interest and costs.  Jury trial is demanded.

## **COUNT II – NEGLIGENT DESIGN AND CONSTRUCTION**

27.     Plaintiff reavers and realleges paragraphs 1 through 14 as if set forth herein.

28.     CARNIVAL actively participated in the design and construction of CARNIVAL HORIZON. CARNIVAL, through its new-build department, in-house engineers, architects, designers, and others actively participated in the design and construction of the cabin and upper berth bed and specifically a sharp-edged hard metal latch protruding out from under the upper berth or bed when the bed is open which caused Plaintiff to suffer serious and permanent personal injury when she struck her head on the hard and extremely sharp-edged latch.  The latch should have been flush with the bed, inside the bed or inside the ceiling of the cabin.

29.     CARNIVAL contracted with design firms to design and construct the bed and the metal latch where this incident occurred, contracted with the shipyard to build the ship, stationed representatives at the shipyard to oversee construction and design elements, and through the contract documents and relationship as owner had the ultimate ability to reject or accept the design, construction, and materials used on the upper berth bed and cabin where Plaintiff was severely injured.

30.     CARNIVAL was negligent in the design, construction, inspection and approval process of the ship for failing to select, construct and/or design an upper berth or bed and/or cabin which was and is reasonably safe in the circumstances.  This is an unusual design for latch. Latches should either be flush with the bed or inside the bed or inside the ceiling or upper wall itself when

not in use. Designing and constructing an upper berth with a hard, sharp, metal edged latch where passengers were expected to be walking or moving around the cabin is not reasonably safe in the circumstances.

31.     CARNIVAL knew or should have known through the exercise of reasonable care in the circumstances that the upper berth or bed posed an unreasonable hazard due to the protruding metal latch.

32.     After installation, CARNIVAL either became aware or should have become aware that the poor design, construction, and/or maintenance of the subject upper berth or bed with the protruding latch created a danger to passengers occupying the cabin. CARNIVAL should have changed the design and/or construction of the upper berth or bed so as to eliminate the sharp protruding metal latch and have the latch mechanism flush with the underside of the upper berth.

33.     Notwithstanding CARNIVAL's duty as aforesaid, CARNIVAL breached its duty by unreasonably:

    a.  Failing to properly design the subject cabin so as not to have a hard, metal latch protruding into a walking area of the cabin, and/or;

    b.  Failing to properly design the subject upper berth or bed without a sharp hard metal latch protruding into a walking area of the cabin, and/or;

    c.  Failing to specify a safe upper berth or bed in the design, construction, inspection and approval process during and after design and construction of the ship which was reasonably safe in the circumstances in regard to the latch used to secure the bed to the ceiling and not being flush with the wall or ceiling when not in use which was sharp-edged hard metal, and/or;

    d.  Choosing and approving an upper berth or bed which was not reasonably safe in the circumstances because the latching mechanism of the bed was unreasonably dangerous for protruding into a walking or sleeping area of the cabin and not being flush with the wall or ceiling; and/or

    e.  Accepting a badly and dangerously designed upper berth in a passenger cabin from the shipyard which featured a sharp-edged metal latch protruding down from the upper berth when the bed is in the down or open

position into a reasonably foreseeable walking area of the cabin where the Plaintiff struck her head without critical inspection or sound engineering analysis.

34. As a result of the negligence of the CARNIVAL as aforesaid, the Plaintiff was injured in and about her body and extremities, suffered brain damage and other serious injuries and suffered pain, mental and emotional distress and anguish therefrom, severe migraine headaches and psychological injuries; incurred medical expense and physical handicap and a loss of the ability to enjoy life; suffered an aggravation of known and unknown pre-existing conditions, suffered scarring on top of her head, suffered a loss of enjoyment and value of the cruise; suffered a loss of earnings and/or loss of earning capacity. Said personal injuries are permanent and/or continuing in nature and the Plaintiff shall continue to suffer such losses and impairments in the future.

WHEREFORE, Plaintiff demands judgment from CARNIVAL for damages, pre-judgment interest and costs. Jury trial is demanded.

## COUNT III - NEGLIGENT FAILURE TO WARN

35. Plaintiff reavers and realleges paragraphs 1 through 14 as if set forth herein.

36. Plaintiff was seriously injured when she was caused to strike her head on a sharp metal latch protruding from the upper berth or bed in her cabin the presence of which she was unaware at the time of the incident.

37. CARNIVAL was aware or should have been aware through the exercise of reasonable care in the circumstances of the unreasonable danger posed by the subject upper berth prior to the Plaintiff's incident as a result of cabin stewards and housekeepers doing routine work in the cabin prior to Plaintiff's injury and prior to Plaintiff's cruise and seeing the latch in the down or open position.

38. The sharp metal object protruding from the bottom of the upper berth was a latching mechanism that held the bed closed to the ceiling when not in use.

39. The dangerous condition as previously alleged was neither open nor obvious to the Plaintiff due to a) the color of the latching mechanism, b) the dim lighting in the cabin and c) the particular configuration of the lower beds by the cabin steward which made the protruding latch less observable to Plaintiff and d) as a result of bed linens sometimes hanging down from the upper berth or bed all of which tended to obscure Plaintiff's vision of the latch at any given time.

40. Notwithstanding the dangerous condition of the latch which was either actually known to Carnival or which should have been known constructively to Carnival through the knowledge of its employees like cabin stewards and housekeepers who would have seen the latch in the course of their ordinary duties in the cabin, CARNIVAL failed to warn Plaintiff of that danger by placing a small sign in the cabin or brightly coloring the sharp metal latch or otherwise communicating a warning to Plaintiff.

41. At all times material, Plaintiff was acting with due care for her own safety.

42. CARNIVAL failed to use reasonable care in the circumstances by failing to warn Plaintiff of the hazard posed by its upper berth or bed and the sharp metal latch protruding therefrom.

43. As a result of the negligence of the CARNIVAL as aforesaid, the Plaintiff was injured in and about her body and extremities, suffered brain damage and other serious injuries, and suffered pain, mental and emotional distress and anguish therefrom, severe migraine headaches and psychological injuries; incurred medical expense and physical handicap and a loss of the ability to enjoy life; suffered an aggravation of known and unknown pre-existing conditions, suffered a loss of enjoyment and value of the cruise; suffered, suffered a loss of earnings and/or

earning capacity. Said personal injuries are permanent and/or continuing in nature and the Plaintiff shall continue to suffer such losses and impairments in the future.

WHEREFORE, Plaintiff demands judgment from CARNIVAL for damages, pre-judgment interest and costs. Jury trial is demanded.

DATED this 19th Day of April 2022.

Respectfully submitted,

/s/ *Paul M. Hoffman, Esq.*
 PAUL M. HOFFMAN, ESQ.
Florida Bar No. 279897
pmh@paulhoffmanlaw.com
Law Office of Paul M. Hoffman, P.A.
2881 East Oakland Park Boulevard
Fort Lauderdale, Florida 33306
Telephone: 954-707-5040
*Attorney for Plaintiff*