UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-20858-BLOOM/Otazo-Reyes

CHARLENE CANYES,

    Plaintiff,

v.

CARNIVAL CORPORATION,
*doing business as*
Carnival Cruise Lines, Inc.,

    Defendant.
_____/

**ORDER ON MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

**THIS CAUSE** is before the Court upon Defendant Carnival Corporation's ("Defendant" or "Carnival") Motion to Dismiss Plaintiff's Third Amended Complaint ("TAC"), ECF No. [34] ("Motion"). Plaintiff Charlene Canyes ("Plaintiff" or "Canyes") filed a Response, ECF No. [35] ("Response"), to which Defendant filed a Reply, ECF No. [38] ("Reply"). The Court has carefully considered the Motion, all opposing and supporting materials, the record in this case and the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is denied.

**I.    BACKGROUND**

This case arises from injuries Plaintiff sustained while aboard Defendant's ship, *Carnival Horizon*. In January 2019, Plaintiff was a cruise passenger on the *Horizon* with her husband and daughter. ECF No. [30-1] TAC ¶ 11. In their cabin, two twin beds were pushed together to form a king-size bed, and there were also upper berths. *Id*. Plaintiff alleges that the cabin steward routinely made up the beds during the cruise and lowered one of the upper berths for her daughter to sleep. *Id*. ¶ 12.

Case No. 22-cv-20858-BLOOM/Otazo-Reyes

On January 15, 2019, Plaintiff bent down to pick up a bottle of water that had fallen out of a small refrigerator on the floor of the cabin. *Id.* ¶ 16. When she stood up, she struck her head on a sharp metal latch, which was protruding from the upper berth, and secures the upper berth to the ceiling when the berth is not in use as a bed. *Id*. Plaintiff alleges that the placement of the refrigerator in the cabin, the configuration of the lower beds into a king-size bed, and the fact that the upper berth was left down, caused her injuries. *Id.* ¶¶ 16-19.

As a result, Plaintiff asserts three claims against Defendant: (1) negligent maintenance (Count I); negligent design and construction (Count II); and negligent failure to warn (Count III). *See* ECF No. [30-1]. In the Motion, Defendant seeks dismissal of each claim in the TAC for failure to state a claim.

## II.     LEGAL STANDARD

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Additionally, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. If the allegations satisfy the elements of the claims asserted, a defendant's motion to dismiss must be denied. *See id.* at 556, 127 S. Ct. 1955.

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true."); *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937.

### III. DISCUSSION

In cases involving alleged torts "committed aboard a ship sailing in navigable waters," the applicable substantive law is general maritime law, the rules of which are developed by the federal courts. *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989) (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628, 79 S. Ct. 406, 3 L. Ed. 2d 550 (1959)); *see also Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990) ("Because this is a maritime tort, federal admiralty law should control. Even when the parties allege diversity of citizenship as the basis of the federal court's jurisdiction (as they did in this case), if the injury occurred on navigable waters, federal maritime law governs the substantive issues in the case."). In the absence of well-developed maritime law, courts may supplement the maritime law with general common law and state law principles. *See Smolnikar v. Royal Caribbean Cruises, Ltd.*, 787 F. Supp. 2d 1308, 1315 (S.D. Fla. 2011).

"To prevail on a negligence claim, a plaintiff must show that '(1) the defendant had a duty to protect the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm.'"

*Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (quoting *Chaparro*, 693 F.3d at 1336). "[T]he benchmark against which a shipowner's behavior must be measured is ordinary reasonable care under the circumstances, a standard which requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition . . . ."). *Keefe*, 67 F.2d at 1322. A defendant has actual notice when the "defendant knows of the risk creating condition" and has constructive notice "when a dangerous condition has existed for such a period of time that the shipowner must have known the condition was present and thus would have been invited to correct it." *Bujarski v. NCL (Bahamas) Ltd.*, 209 F. Supp. 3d 1248, 1250-51 (S.D. Fla. 2016).

### A. Count I (Negligent Maintenance)

In the Motion, Defendant argues that Plaintiff fails to state a claim for negligent maintenance because the TAC does not contain sufficient allegations regarding actual or constructive notice. Defendant contends that the allegations regarding notice are mere generalizations and speculation, relying primarily upon *Cisneros v. Carnival Corporation*, No. 1:19-cv-24155-JLK, 2020 WL 376695, at *1-2 (S.D. Fla. Jan. 23, 2020) and *Holland v. Carnival Corporation*, No. 20-21789-Civ-Scola, 2021 WL 86877, at *2-3 (S.D. Fla. Jan. 11, 2021). Plaintiff responds that the TAC contains sufficient facts to provide a reasonable inference that Carnival had constructive notice of the dangerous conditions—the latch protruding from the upper berth when it was left in the down position, and placement of the refrigerator.

The Court agrees with Plaintiff. The allegations in the TAC are not generalized or conclusory as in *Cisneros* and *Holland*. In *Cisneros*, the allegations regarding notice included only that "the dangerous conditions existed for a sufficient length of time so that Defendant . . . should have learned of them." 2020 WL 376695, at *2 (quotations omitted). In *Holland*, the plaintiff

alleged that the defendant was on notice "because the glass stairs where the Plaintiff slipped are one of the most highly trafficked areas of the ship which are flanked by shops that had been staffed for four hours or more by dozens of employees who have unobstructed views of the stairs." 2021 WL 86877, at *1 (quotations omitted). The plaintiff in *Holland* also claimed that the defendant was on notice due to "frequent spills on the staircase, a fact that Carnival is aware of due to the frequent nature of prior slip and fall incidents on this staircase." *Id*. (alteration omitted).

However, unlike the general allegations in *Cisneros* and *Holland*, the TAC contains specific allegations regarding Carnival's constructive notice of the allegedly dangerous conditions in the cabin occupied by Plaintiff. In pertinent part, the TAC alleges that the "cabin steward routinely made up the beds during the cruise and lowered one of the upper berths or bed so Plaintiff's daughter could sleep there. He also configured the lower beds into a king-size bed for Plaintiff and her husband." ECF No. [30-1] ¶ 12. The TAC alleges further that the cabin steward lowered and raised the upper berth each day and

> would have seen the latch in the open or down position during the exercise of his or her ordinary duties during Plaintiff's cruise or during any prior cruises since the vessel went into service. . . . The cabin steward would also or should also have known that the refrigerator is placed adjacent to a wall on the floor where the use of it places the passenger in danger of striking her head on the underside of the upper berth and protruding latch as she stands up and moves away from using the refrigerator when the upper berth is left in the down position.

*Id*. ¶ 20. Upon review, these allegations are sufficient to allege constructive notice, and the Court will not dismiss Count I.

### B.  Count II (Negligent Design and Construction)

Carnival argues that Plaintiff's claim for negligent design and construction should be dismissed because the allegations are conclusory, and there are insufficient facts regarding notice.

Plaintiff responds that the allegations are sufficient, and Carnival seeks to impose a heightened pleading standard with respect to the negligent design and construction claim.

"Liability based on negligent design would require that Carnival 'actually created, participated in, or approved the alleged negligent design[.]'" *Johnson v. Carnival Corp.*, No. 19-cv-23167-BLOOM/Louis, 2021 WL 1341526, at *9 (S.D. Fla. Apr. 9, 2021) (quoting *Groves v. Royal Caribbean Cruises, Ltd.*, 463 F. App'x 837, 837 (11th Cir. 2012)). In addition, a defendant can only be liable for negligent design "if it had actual or constructive notice of such hazardous condition." *Groves*, 463 F. App'x at 837.

Defendant cites to *Katzoff v. NCL (Bahamas) Ltd.*, No. 19-cv-22754-MGC, 2020 WL 7493098, at *2 (S.D. Fla. Aug. 31, 2020), in which the court denied a request to dismiss the plaintiff's negligent design claim, arguing that the allegations here are distinguishable and insufficient. The Court disagrees. In *Katzoff*, the plaintiff tripped and fell over a stage monitor on the dance floor during a dance competition. She alleged that a technician working as part of the cruise line's crew placed the monitor on the dance floor and the cruise line "negligently designed, laid out and set up the dance floor." 2020 WL 7493098, at *2 (citation omitted). Here, although Plaintiff does not specifically identify the individual responsible for the layout of the cabin she occupied, the TAC alleges that Defendant "actively participated in the design and construction of the Carnival *Horizon*," and that Defendant

> actively participated in the design and construction of the cabin including the upper berth bed, the placement of the refrigerator adjacent to the wall on the floor and in proximity of the upper berth when it is in the lowered or down position and the upper berth bed with the sharp protruding latch.

ECF No. [30-1] ¶ 31. At the motion to dismiss stage, where the Court accepts the facts as alleged by Plaintiff, these allegations are sufficient.

Defendant also argues that the allegations regarding notice are insufficient because there are no facts alleged that demonstrate how or why Defendant knew that the design of the cabin was negligent. Plaintiff urges the Court to reach the opposite conclusion. Upon review, the Court concludes, as it did with respect to Count I, that the allegations regarding notice are sufficient at this stage. The TAC alleges that the cabin steward was responsible for lowering the upper berth and configuring the lower beds into a king size bed, and that the upper berths are supposed to be stowed in the ceiling when not in use. ECF No. [30-1] ¶¶ 11-12. In addition, the TAC alleges that the upper berth was left down. *Id*. ¶ 19. The TAC alleges further that when left down, the upper berth in conjunction with the placement of the refrigerator, poses a danger to passengers for several reasons: including the sharp edges of the latch; the color of the latch, which causes it to be less noticeable; and the location of the latch and placement of the refrigerator, which limit the amount of space available to maneuver in the cabin. *See id*. ¶ 23a.-h. Thus, here, as in *Katzoff*, the allegations are sufficient to allow the reasonable inference that the "defective condition exist[ed] for a sufficient period of time to invite corrective measures." *Katzoff*, 2020 WL 7493098, at *2 (quoting *Guevara*, 920 F.3d at 720). The Court finds that the TAC contains sufficient allegations to infer that Defendant had constructive notice and will not dismiss Count II.

**C. Count III (Negligent Failure to Warn)**

Defendant argues that the Court should dismiss the claim for negligent failure to warn because the allegations regarding notice are insufficient, and the alleged danger was open and obvious. In response, Plaintiff disagrees that the dangers were open and obvious, or that the allegations of notice are insufficient.

"It is clearly established that cruise lines owe their passengers a duty to warn of known or foreseeable dangers." *Flaherty v. Royal Caribbean Cruises, Ltd.*, No. 15-22295, 2015 WL

7

8227674, at *3 (S.D. Fla. Dec. 7, 2015). However, in order to have a duty to warn of a danger, the cruise line must have "actual or constructive notice of the unsafe condition." *Horne v. Carnival Corp.*, 741 F. App'x 607, 608 (11th Cir. 2018) (citing *Keefe*, 867 F.2d at 1322). In this case, the TAC alleges that the cabin steward was responsible for making up the beds and lowering the upper berth so that Plaintiff's daughter could sleep. ECF No. [30-1] ¶ 12. The TAC alleges further that the upper berth is supposed to be locked and stowed when not in use, and that the cabin steward lowered and raised the upper berth each day, but left it in the down position on the day of the incident. *Id*. ¶¶ 11-12, 19-20.

Defendant's reliance on *Moseley v. Carnival Corporation*, 593 F. App'x 890, 891-93 (11th Cir. 2014) is unavailing. In that case, the plaintiff passenger visited bathroom facilities at a port of call, and sustained injuries when the bathroom sink dislodged and fell on her. *Id*. at 891. The plaintiff in *Moseley* pled no facts regarding the defendant's notice of the danger, which in addition was at a port of call, and not on the defendant's vessel. *Id*. at 893. As such, the court concluded that the allegations were insufficient. *Id*. By contrast, this case involves a danger on Defendant's ship, and the TAC alleges that that the upper berth was left in the down position, even though it should have been stowed when not in use, and that the cabin steward was responsible for configuring and making up the beds. Contrary to Defendant's arguments, these allegations are not conclusory, and support the inference that Carnival had constructive notice of the dangers posed by the latch on the upper berth and the placement of the refrigerator in the cabin.

In addition, the determination of whether a danger is open and obvious is not properly made at the pleading stage. *See Joseph v. Carnival Corp.*, No. 11-20221-CIV, 2011 WL 3022555, at *4 (S.D. Fla. July 22, 2011) ("The open and obvious question requires a context specific inquiry and necessitates development of the factual record before the Court can decide whether as a matter of

law, the danger was open and obvious.") (quoting *Prokopenko v. Royal Caribbean Cruises, Ltd.*, No. 10-20068-CIV, 2010 WL 1524546, at *2 (S.D. Fla. Apr. 15, 2010)). Here, the TAC alleges that the dangerous conditions were neither open nor obvious because of the color of the latch and the configuration of the lower beds, which made the latch less observable; and the placement of the refrigerator, to which access would require an awkward maneuver with the upper berth lowered. *See* ECF No. [30-1] ¶ 43. This allegation is supported by the additional allegation that the latch and placement of the refrigerator put Plaintiff in a position of striking her head on the latch with the berth in a lowered position. *See id.* ¶ 46. At this stage, the Court can reasonably infer in favor of Plaintiff, as the Court must at this stage of the proceedings, that the alleged dangers were not open and obvious.

As such, the Court will not dismiss Count III.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [34]**, is **DENIED**. Defendant shall file its Answer **no later than September 26, 2022**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on September 14, 2022.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record